HARRIET. M. KENDALL, Appellee, v. CITY OF DES MOINES, Appellant.

NEGLIGENCE: Operation of Automobile—Necessary Degree of Control. The operator of an automobile is not *necessarily* guilty of negligence *per se* by failing to have the automobile under such control that he can stop it within the distance that he can plainly see obstructions ahead of him. So held where the op-

erator, on a dark and misty night, drove into a negligently guarded excavation in a public street.

*Appeal from Des Moines Municipal Court.*—JOSEPH E. MEYER, Judge.

MAY 20, 1918.

ACTION for damages on account of the alleged negligence of the defendant city in failing to provide proper barriers and to place warning lights at a ditch in one of its streets. Judgment for plaintiff. Defendant appeals.—*Affirmed.*

*H. W. Byers, Guy A. Miller,* and *D. Cole McMartin,* for appellant.

*Cummins, Hume & Bradshaw,* for appellee.

STEVENS, J.—This is an action for damages to an automobile, which plaintiff alleges in her petition resulted on account of a dangerous excavation in one of the streets of defendant city, while said automobile was being driven by an employee of the Kendall Auto Taxicab Service Company, to whom it was leased. The excavation complained of was about 20 inches in width and 3 feet in depth, and extended entirely across East Fourteenth Street, on the south side of its intersection with Hull Avenue. A barricade, consisting of 2-inch planks laid on top of a series of tiling stood on end, was placed about 3 feet north of the ditch, extending the full length thereof. The tiling were about 2½ feet in height. No signal lights were placed on or near the barriers.

The negligence charged in plaintiff's petition is the alleged failure of defendant to properly guard the excavation or ditch by placing signal lights near enough thereto to warn travelers of the danger thereof.

Counsel for appellant do not, in argument, contend that defendant was not negligent in failing to place proper signal lights in the vicinity of the excavation, as a warning to travelers upon the street, but rely for reversal entirely upon the alleged contributory negligence of the driver of the auto-

mobile. We gather from the evidence that the night in question was dark, somewhat misty and hazy, and the place where the excavation and barriers were located, dimly lighted. It appears to be conceded that the only street light in the vicinity was an incandescent light, which, the driver of the automobile testified, did not sufficiently light the street to reveal the presence of the barriers or the excavation. The accident occurred about midnight, and was observed only by the occupants of the automobile.

The contention of counsel for appellant is that the driver of the automobile was negligent in operating same at such a high rate of speed that he was unable to bring it to a complete stop within the distance the barriers across the street were visible to him by the headlights of his automobile: that is, we are asked to hold that the driver of an automobile upon the streets of a city at night must have the same under control, and must not drive it at a rate of speed in excess of that which will enable him to stop the same within the distance obstructions in the street are discernible to him within the radius of the lights thereon.

Our attention is called to *Lawson v. Town of Fond du Lac,* 141 Wis. 57 (123 N. W. 629), *West Construction Co. v. White,* 130 Tenn. 520 (172 S. W. 301), and *Knoxville R. & L. Co. v. Vangilder,* 132 Tenn. 487 (178 S. W. 1117), in each of which the court held it to be the duty of the driver of an automobile upon the streets of cities, or highways, in the nighttime, to drive the same at such a rate of speed that it may be brought to a standstill within the distance that he can plainly see objects or obstructions ahead of him, and that the failure to do this, in case of accident, will amount to contributory negligence. This, the Wisconsin court declares, is the minimum degree of care that should be required.

It is now provided by statute in Wisconsin that:

" * * * It shall be unlawful for any person to operate or drive any automobile, motorcycle, or other similar motor vehicle along or upon any public highway of this state at

such a rate of speed that such automobile, motorcycle, or other similar motor vehicle cannot be brought to a complete stop within the distance ahead that the driver or operator thereof can, with the aid of the lights thereon, in connection with the lights from other sources, see an object the size of a person." Statutes 1915, Section 1636-52.

In *Raymond v. Sauk County*, (Wis.) 166 N. W. 29, the Wisconsin court extended the doctrine of the above cases to the operation of automobiles in the daytime.

It is settled law of this state that cities must keep their streets free from obstructions and nuisances which interfere with ordinary public travel, and this duty applies to automobiles, as well as other vehicles. *Wolford v. City of Grinnell*, 179 Iowa 689; *House v. Cramer*, 134 Iowa 374; *Simmons v. Lewis*, 146 Iowa 316; Section 753, Code.

The driver of an automobile has the right to assume that the street is in a safe condition for travel, and that the city has exercised a proper degree of diligence and caution to keep it so. *Frazee v. City of Cedar Rapids*, 151 Iowa 251; *Frohs v. City of Dubuque*, 169 Iowa 431. It is, however, the duty of the driver of an automobile to exercise ordinary and reasonable care for his own safety and that of the property entrusted to his care. Ordinary care, as applied to the driver of an automobile, is such care as prudent men in such occupation ordinarily use, taking into consideration the time, place, condition of the highway, weather, the character of the instrumentality employed, the presence of other travelers or vehicles upon the streets, the extent to which the same is lighted, and many other facts and circumstances often present and necessary to be considered. Under the doctrine of the Wisconsin and Tennessee cases, the duty of the driver of an automobile is to have the same constantly under such control and driven at such a rate of speed as will enable him to stop within the distance within which objects are visible by the rays of its headlights. A failure to do this amounts to contributory negligence, and the driver could not recover, in case of injury resulting from a collision of

the automobile with an object thus visible to the driver.

It is the general rule that the driver of an automobile is required to use reasonable and ordinary care for his own safety, and cannot be held to the absolute duty of observing all defects and obstructions in the highway, but must make such observations as the circumstances reasonably require. *Geise v. Mercer Bottling Co.*, 87 N. J. L. 224 (94 Atl. 24); *Sweet v. Salt Lake City*, 43 Utah 306 (134 Pac. 1167); *Wells v. City of Lisbon*, 21 N. D. 34 (128 N. W. 308); *City of Valparaiso v. Chester*, 176 Ind. 636 (96 N. E. 765); *Dunkin v. City of Hoquiam*, 56 Wash. 47 (105 Pac. 149); *Loose v. Township of Deerfield*, 187 Mich. 206 (153 N. W. 913).

In the case at bar, the driver of the automobile testified that he was driving the same at 15 or 20 miles per hour; that he was looking ahead, but did not observe the barriers until he was too close to avoid collision therewith; that he had the car under control, but, on account of the slippery condition of the street at the intersection, which was not paved, was unable to manage the car so as to avoid running into the ditch. We take the following extracts from the abstract of the driver's testimony:

"I was not exceeding 20 miles an hour, coming down East 14th Street. I came down East 14th to Hull Avenue, approaching Hull Avenue at 15 to 20 miles an hour. I was not paying any attention to my passengers. The pavement on East 14th is concrete. I didn't know, at that time, how far south that paving extended. I ran off into the mud just a little before I came to the intersection of Hull Avenue. I had the dimmers on. When I got to the corner, I noticed a kind of a dark outline. I immediately throwed in my clutch, pushed down my brakes, and tried to swing out. I lost all control, and the front wheel hit the ditch enough to throw me over. The barricade was down on the right-hand side. When I approached the intersection, I was looking ahead, and had the car under control. I first saw the obstruction at the crossing,—that is, the north line,—and about the width of the street away. The intersection was

muddy, with a crystalized top on it. When I threw in my clutch and put on the brake, I couldn't stop, and I pulled on the emergency, but couldn't do anything then; so I tried to throw it out to the side, but, when a car is skidding, you cannot handle her. The car was skidding in the mud. I intended to go straight down 14th Street. I don't remember seeing any of the barricade, to tell the truth, at all, right at the start, before the accident. It looked like a blur, or a dark outline. It was right across 14th Street on the south side. * * * I steered the car to the west to clear myself. I thought it was something. I noticed it when I was on the crossing. When I saw it, I throwed down the brakes as tight as I could, and tried to see what it was; got up a little closer and figured out what it was, and throwed my wheel clear around, trying to sheer out from it; and the barricade was down, and my left wheel hit, and that was what throwed me over. The barricade was down on the west side. The automobile was turned completely over, and I was fastened under the wheel. I turned the engine off and got out the best I could, and broke out the other side of the car, to get the passengers out. It was hazy that night. It was dark, very dark. I didn't see any red light or danger signal while I was coming down 14th Street. I saw an incandescent light on the telephone pole. No light came down to the ground at all."

He was the only witness called, who saw the accident, who testified to the speed of the automobile. Several witnesses residing in the vicinity testified that, from the noise the machine was making, in their judgment it was going at 30 or 35 miles per hour. Evidence of experiments made at the intersection in question, under circumstances similar to those existing on the night of the accident, tended to show that the barriers were discernible at a distance of 105 feet, and, with the full headlight of the automobile, for a distance of 325 feet, and that, notwithstanding the slippery condition of the street, the corner at the intersection was easily turned at the rate of 25 miles per hour.

An ordinance of the defendant city provided that the rate of speed of automobiles on the street in question, except at the intersection, shall not exceed 20 miles per hour, and that, upon approaching street intersections, same shall not exceed 12 miles per hour. The ordinances of said city further required:

"All excavations or trenches in streets, highways, avenues, or alleys shall be so guarded by proper railings or barricades and signal lights as to prevent injury to persons or property."

Ordinarily, the question of contributory negligence is for the jury. The driver of the car, at the time, had the right to assume that all parts of the street of defendant intended for travel were reasonably safe, but he was required to exercise ordinary care to observe or discern dangerous obstructions or excavations in the streets, and to avoid running into the same. It was also the duty of the defendant city to place signal lights at the point of danger, to warn travelers upon the highway thereof. It is conceded that no lights were placed in the vicinity of the barriers or excavations, on the night in question. We think that, under the evidence, it was clearly a question of fact for the jury to say whether or not the driver of the automobile was guilty of contributory negligence. The street was in general use by the public, and the duty of defendant in respect thereto was plain, and it is not contended that this duty was performed. Whether the driver of the automobile was guilty of contributory negligence was a question of fact for the jury. *Hanson v. City of Anamosa,* 177 Iowa 101; *Frohs v. Dubuque,* supra; *Loose v. Township of Deerfield,* supra; *Corcoran v. City of New York,* 188 N. Y. 131 (80 N. E. 660); *Abbott v. Board of County Commissioners,* 94 Kan. 553 (146 Pac. 998); *Sweet v. Salt Lake City,* supra; *Dunkin v. City,* supra; *City of Valparaiso v. Chester,* supra; *Wells v. City of Lisbon,* supra; *Sweetman v. City of Green Bay,* 147 Wis. 586; *Geise v. Mercer Bottling Co.,* supra.

The driver testified that he could not clearly see or de-

termine that there was an obstruction in the street; that he saw only a blurred outline; and that the slippery condition of the intersection caused the automobile to slide and become difficult to control. The paving ended near the intersection, and he claims not to have known this fact. Fast or reckless driving of automobiles upon the streets or highways is not, by any means, to be encouraged, but we do not feel inclined to adopt the doctrine of the Wisconsin and Tennessee courts.

The evidence in this case as to the speed of the automobile and the distance the barriers were discernible is in some conflict, and, upon the whole record, there was such dispute as to require submission to the jury of the question of contributory negligence. This is the only question argued.—*Affirmed.*

PRESTON, C. J., WEAVER and GAYNOR, JJ., concur.