State v. Lassiter

STATE OF NORTH CAROLINA v. RICHARD WAYNE LASSITER

No. 8422SC118

(Filed 16 October 1984)

1. **Criminal Law §§ 77.1, 169.3— denial of guilt by defendant—exclusion of testi-mony—prejudicial error**

     The trial court erred in the exclusion of testimony by defendant that he did not commit the robbery in question, and such error was not rendered harmless by defendant's later testimony that he did not take any money from the business allegedly robbed since such testimony was not substantially the same as the excluded testimony.

2. **Criminal Law § 66.16— photographic identification—independent origin of in-court identification**

     Although the evidence did not support the trial court's finding that a rob-bery victim paid close attention to the robber's facial features, the trial court did not err in concluding that the victim's in-court identification of defendant was of independent origin and not tainted by a pretrial photographic identifica-tion where the evidence supported the trial court's further findings that the victim was able to observe the robber in a well-lighted area for five minutes; the victim was able positively to identify defendant in a photographic lineup only a month after the offense occurred; and the description which the victim gave on the day of the robbery matched the general description of the defend-ant.

APPEAL by defendant from *Walker (Russell G., Jr.), Judge.* Judgment entered 17 August 1983 in Superior Court, IREDELL County. Heard in the Court of Appeals 28 September 1984.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Harry H. Harkins, Jr., for the State.*

*Appellate Defender Adam Stein by Assistant Appellate De-fender Lorinzo L. Joyner for the defendant appellant.*

BRASWELL, Judge.

Shortly before 6:00 p.m. on 9 September 1984 as Charlene Penny was preparing to close Moore's One-Hour Martinizing in Statesville, a bearded man wearing clip-on sunglasses entered the store and asked for the manager. When Penny told him that the manager wasn't there, he ordered Penny to get a bag and put all the store's money in it. After Penny had put $50 in the bag, the man ordered her to go into the back of the store and remove her clothes. When she attempted to escape, the man grabbed her,

pushed her into the back of the store, struck and kicked her, and ripped her blouse. The man then fled the store.

Ms. Penny telephoned Jimmy and Tim Shumaker who were working a few hundred yards away at Shumaker's Gulf. They arrived a few minutes later along with the police. As Ms. Penny was describing her assailant, the defendant, his wife, and child drove up to the store and asked what had happened. Ms. Penny was describing her assailant at that time and told the police that he "looked kind of like" the man in the car.

The next day defendant came by the store and asked Ms. Penny how she was doing. Because Ms. Penny was very busy, she thanked him for his concern, but didn't pay much attention to his looks. About a month later, Ms. Penny again observed defendant, who lived near the store, walk past the store. He no longer had a beard. The following day she observed the defendant walk by the cleaners several times. She became scared and telephoned the police and told them that she had seen a person who she thought might have robbed her. The police talked with the defendant about the robbery and obtained his driver's license photograph, in which he was pictured with a beard, for use in a photographic lineup. They ordered him not to go near the One-Hour Martinizing. Defendant then went to the store, showed Ms. Penny his picture, denied robbing her, and asked her not to pick his picture out of a lineup. Ms. Penny selected the defendant's picture from the photographic lineup.

At trial, the only evidence linking defendant to the crime was Ms. Penny's identification. The defendant presented detailed alibi and reputation evidence. Defendant was convicted of assault on a female and robbery with a dangerous weapon. From a judgment sentencing him to the mandatory minimum term of 14 years imprisonment, defendant appealed.

[1] Defendant brings forth two questions on appeal. Believing that one of his arguments has merit, we award defendant a new trial. Defendant testified in his own defense. During his testimony the following exchange occurred:

Q. Mr. Lassiter, I'll ask you, did you rob the One-Hour Martinizing on September 9, 1982?

A. No, I did not.

Mr. Morris: Objection.

Court: Sustained.

Mr. Morris: Move to strike the answer.

Court: Members of the Jury, disregard his answer.

It is obvious, and the State in its brief concedes, that these actions of the trial court were erroneous. The State contends, however, that the actions were not prejudicial since later in the examination defendant was able to testify that he did not take any money from the business. We are constrained to disagree.

In support of its contention, the State cites *State v. Colvin*, 297 N.C. 691, 256 S.E. 2d 689 (1979), which states that no prejudice arises when the same or similar testimony to that erroneously excluded is later admitted. Defendant was convicted of robbery with a dangerous weapon under N.C.G.S. 14-87. G.S. 14-87 provides that the offense of robbery with a dangerous weapon is completed if there is an attempt to take personal property by the use of a firearm or other deadly weapon. Thus, defendant's testimony that he took no money is not substantially the same as the excluded testimony. We believe that had the court not erroneously stricken the defendant's denial of guilt, there is a reasonable possibility that a different result would have been reached. *See* G.S. 15A-1443(a). Defendant is, therefore, entitled to a new trial.

[2] Having determined that the defendant is entitled to a new trial, we now consider whether the trial court erred in allowing Ms. Penny to make an in-court identification of the defendant, as the question will likely arise during defendant's new trial. At trial, the defendant objected to Ms. Penny's in-court identification. The trial court conducted a *voir dire* hearing in which he made the following findings of fact:

1) That the defendant, Richard Wayne Lassiter, was present in court, represented by his attorney, William Crosswhite;

2) That the State of North Carolina was present in court and represented by Assistant District Attorney, Gene Morris;

3) That on September 9, 1983, Charlene Penny was working alone as a cashier at the One Hour Martinizing location, Statesville, Iredell County, North Carolina;

4) That her working area was enclosed on three sides by glass walls;

5) That at approximately 5:55 p.m. she observed a bearded man walking in front of her work station;

6) That the bearded man entered through a side door and approached her at the cash register;

7) That the bearded man was wearing sunglasses;

8) That the bearded man was in her presence for approximately five minutes;

9) That during this time the bearded man demanded money from the cash register and subsequently assaulted her in the back room of the One Hour Martinizing;

10) That she was in his presence for some five minutes;

11) That she was in his presence in a well lighted area;

12) That she paid close attention to his face and facial features;

13) That only his sunglasses obstructed her view of his face;

14) That some 20 minutes later while she was being interviewed by the Statesville Police, a bearded man who looked like her assailant drove up to the cleaners in a green LTD automobile and inquired as to what had taken place and as to her safety;

15) That on the following day, the same man in the LTD came back to the cleaners and spoke to her;

16) That a photographic lineup presented to Charlene Penny on September 9 did not result in the identification of an assailant;

17) That approximately one month later, Charlene Penny observed a non-bearded man who resembled her assailant walk in front of the dry cleaners and wave to her;

18) That on the following day she saw the same non-bearded man walk by in front of the dry cleaners and called the police;

19) That she gave Detective Zimmerman of the Statesville Police Department a description of the non-bearded man whom she had observed on the last two days;

20) That on the following day she observed a photographic lineup of eight photographs of bearded men;

21) That she identified from that lineup a photograph of the defendant; and

22) That Charlene Penny is positive that the defendant, present in court at this trial, is the man who robbed and assaulted her on September 9, 1982, even though his appearance is changed by the removal of his beard.

The court then concluded as a matter of law that

the identification of the defendant by the State's witness, Charlene Penny, as the man who robbed and assaulted her on September 9, 1982, is based upon her independent recollection of her observations of her assailant at the time of the crime and that the photographic lineup exhibited to Charlene Penny of [sic] 1982 was free of any impermissible suggestive procedure and that the in-court identification by Charlene Penny is neither based on the photographic lineup nor is it tainted by the photographic lineup.

The defendant excepted only to Finding of Fact No. 12 and to that portion of the conclusion in which the court concluded that the in-court identification was based upon Ms. Penny's independent recollection of her observation of her assailant at the time of the crime. After reviewing the evidence we are forced to conclude that the evidence does not support Finding of Fact No. 12. There was direct evidence presented during her *voir dire* examination that Ms. Penny did not pay "close attention" to the face and facial features of her assailant. We do not believe, however, that the trial court erred in its admission of the identification evidence for the following reasons. Because defendant failed to except to any of the other findings of fact, the question of whether there is sufficient evidence to support these findings is not before us. *State*

*v. Tate*, 300 N.C. 180, 184, 265 S.E. 2d 223, 226 (1980). We believe that the non-excepted-to findings are sufficient to support the conclusion that the identification was based upon Ms. Penny's independent recollection of her observations.

Five factors to be considered when determining whether an out-of-court identification procedure was so impermissibly suggestive so as to render the in-court identification inadmissible are: (1) the opportunity of the witness to view the criminal; (2) the witness' degree of attentiveness; (3) the accuracy of the witness' principal description; (4) the level of certainty at confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed. 2d 401 (1972); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). In the case *sub judice* the trial court found that the witness was able to observe the criminal in a well-lighted area for five minutes. Further, the witness was able to positively identify the defendant in a photographic lineup within a relatively short time, one month, after the offense occurred. Furthermore, the description which Ms. Penny gave on the day of the robbery matched the general description of the defendant. Considering this uncontroverted evidence, we find that the trial court's admission of the identification testimony was proper. The assignments of error are overruled.

For the reasons stated earlier, defendant is awarded a

New trial.

Judges WEBB and EAGLES concur.